**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES K. BISHOP,<br><br>Plaintiff,<br><br>vs.<br><br>OHIO DEPARTMENT OF CORRECTIONS, *et al.*,<br><br>Defendants. | : | Case No. 2:26-cv-43<br><br>Judge Edmund A. Sargus, Jr.<br>Chief Magistrate Judge Stephanie K. Bowman |

**REPORT AND RECOMMENDATIONS**

Plaintiff, an inmate incarcerated at the Noble Correctional Institute ("NCI"), filed a *pro se* civil rights Complaint in this Court pursuant to 42 U.S.C. § 1983. (Doc. 4). By separate Order, Plaintiff was granted leave to proceed *in forma pauperis*. (Doc. 3).

This matter is now before the Court for a *sua sponte* review of Plaintiff's Complaint to determine whether the Complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

As explained below, the Undersigned **concludes** that Plaintiff's Complaint should be **dismissed** in its entirety.

## I. Screening Legal Standard

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fee and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v.*

*Hernandez*, 504 U.S. 25, 31 (1992) (citing *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. § 1915(e)(2)(B)(i). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke*, 490 U.S. at 328–29; *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when the plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. And an action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton*, 504 U.S. at 32; *Lawler*, 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (citing *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Though by the same token, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470–71 ("[D]ismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim [under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)].").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

**II. Allegations and Parties**

Plaintiff names as Defendants: NCI Warden Jay Forshey, NCI Inspector Cobb (in charge of responding to grievances), NCI Officer Crossin (in charge of passing out legal mail), Ohio Department of Rehabilitation and Correction ("ODRC") Annette Chambers-Smith, and NCI Major Sean Frizzel (also responded to Plaintiff's grievances). (Doc. 4, at 48). Plaintiff sues these Defendants in their individual and official capacities. (*Id*. at 47).

Plaintiff states that on August 14, 2025, while in line to receive legal mail, he was physically assaulted by inmate David Jones in front of Defendant Crossin. (Doc. 4, at 49). The next day, after noticing that Jones was not disciplined, Plaintiff sent a kite to Defendant Cobb requesting a copy Crossin's conduct report regarding the assault. On August 18, 2025, Cobb responded that Plaintiff would have to direct that request to the Warden's assistant, Mrs. Wilson (not named as a Defendant).

A month later, Plaintiff filed an "unprofessional conduct" grievance against Defendant Crossin for failing to comply with ODRC policy and state law requiring him to file a written report within one day of Jones' assault against Plaintiff and to report the offense to the Ohio State Highway Patrol ("OSHP"). (Doc. 4-1, at 60). Plaintiff asserted that Crossin's failure to make those reports was in retaliation against Plaintiff for suing Defendants regarding alleged mail violations. (*Id*.). Plaintiff's grievance was denied the following day by Defendant Frizzel because Crossin did report the altercation to the Institutional Inspector (Cobb), because a conduct report was issued against inmate Jones, and because it was determined that the level of altercation did not meet the standard for an OSPH investigation. (*Id*., at 62). Frizzel also denied that there was any "level of retaliation in this complaint. This was an alleged inmate on inmate issue which was properly handled." (*Id*.).

Plaintiff escalated the grievance on September 26, 2025, for inadequate investigation—both because it was Cobb, rather than Crossin, who filed the conduct report about Jones' assault against Plaintiff and because NCI personnel failed to report the assault to OSHP as required by ODRC policy. (*Id*.). Plaintiff asserts that on September 29, 2025, Cobb denied Plaintiff's grievance, falsely responding that Plaintiff's grievance was filed too late and that the OSHP was notified about the assault, as it is about all assaults. (Doc. 4, at 49; Doc. 4-1, at 61). Plaintiff escalated that grievance on the same day, complaining that OSHP never contacted him about the investigation and that he never received any OSHP report. When Plaintiff also sent a kite later that day to the Warden's assistant, Mrs. Wilson, she responded that "I checked with the inspector on this, he stated that there was no report made to the Highway Patrol nor did he ever say that he contacted them." (*Id*. at 49-50; Doc. 4-1, at 63).

Plaintiff states that on August 21, 2025, inmate Chuck Edmonson, who witnessed the

assault, executed an affidavit describing the assault. (Doc. 4, at 50; Doc. 4-1, at 64).

In relief, Plaintiff seeks: (a) preliminary and permanent injunctive relief against NCI staff and their agents to immediately order them to follow ODRC rules to prevent further injuries to inmates and to retrain staff on the proper procedures for conducting hearings on conduct reports; (b) compensatory damages in the amount of $13,000,000 against Defendants' employer; (c) punitive damages in the amount of $50,000.00 each against Defendants Crossin, Frizzel, Chambers-Smith, Cobb, and Forshey; (d) all costs involved with this suit; (e) any other relief that the Court determines to be just, proper, and equitable; and (f) a trial by jury on all issues triable to a jury. (Doc. 4, at 56).

## III. Analysis

Based on the above allegations, Plaintiff raises, pursuant to 42 U.S.C. § 1983, in *Count One*, a claim of retaliation claims against Defendants Crossin, Cobb, and Frizzel under the First Amendment, for failing to follow ODRC policies and for thwarting Plaintiff from taking advantage of the grievance process "through machination, misrepresentation, and intimidation"; in *Count Two*, a retaliation claim against Defendants Crossin, Cobb, and Frizzel under the Eighth Amendment, again, for thwarting Plaintiff from taking advantage of a grievance process "through machination, misrepresentation, and intimidation," subjecting Plaintiff to pain and suffering; in *Count Three*, a Fourteenth Amendment due process claim against Defendants Cobb and Frizzel—again for thwarting Plaintiff's access to the grievance process "through machination, misrepresentation, and intimidation"; and in *Counts Four and Five*, Fourteenth Amendment due process claims against Defendants Chambers-Smith and Forshey, respectively, for failing to train and/or hire competent employees. (Doc. 4, at 50-56). As explained below, the Undersigned **RECOMMENDS** that all of Plaintiff's claims be **dismissed**.

**A. Official Capacity Claims for Monetary Damages**

As a preliminary matter, to the extent that Plaintiff is suing the Defendants in their official capacities, his claims against Defendants in their official capacities are subject to dismissal to the extent that he seeks monetary damages. Absent an express waiver, a state is immune from damages suits under the Eleventh Amendment. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (and cases cited therein); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). The State of Ohio has neither constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes No. 1 and No. 2*, 694 F.2d 449, 460 (6th Cir. 1982). The Eleventh Amendment bar extends to actions where the state is not a named party but where the action is essentially one for the recovery of money from the state. *Edelman*, 415 U.S. at 663 (citations omitted); *Ford Motor Co. v. Dep't of Treasury of State of Indiana*, 323 U.S. 459, 464 (1945). A suit against Defendants in their official capacities would, in reality, be a way of pleading the action against the entity of which Defendants are agents. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 (1978). Thus, actions against state officials in their official capacities are included in this bar. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974); *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (citation and ellipsis omitted)). Because all of the properly named Defendants are immune from suit in their official capacities to the extent that Plaintiff seeks monetary damages, the claims against the properly named

Defendants in their official capacities should **be DISMISSED with prejudice**. The Undersigned turns to Plaintiff's remaining claims.

**B. Count One – Retaliation**

Plaintiff sues Defendants Crossin, Cobb, and Frizzel for retaliation under the First Amendment, for failing to follow ODRC policies; and for retaliation under the Eighth Amendment, for subjecting Plaintiff to pain and suffering by thwarting him "from taking advantage of a grievance process through machination, misrepresentation, and intimidation[.]" (Doc. 4, at 50). He asserts that Crossin failed to personally issue a conduct report following inmate Jones' assault against Plaintiff, and did so in retaliation for Plaintiff filing a lawsuit against Crossin. (Doc. 4, at 50). He adds that Cobb and Frizzel breached policy by not contacting the OSHP, by not putting a separation on inmate Jones, and by denying Plaintiff's grievances—again, in retaliation for Plaintiff filing a lawsuit against the Mailroom staff. In addition, Plaintiff contends that Cobb lied about contacting the OSHP regarding the assault, as confirmed by the Warden's assistant, Mrs. Wilson—additional evidence of retaliation against him for his lawsuit against the mailroom. (*Id*. at 50-51). "Plaintiff alleges he suffered from: 1.) Physical and mental discomfort 2.) High anxiety and 3.) Unnecessary and wanton infliction of pain and suffering." (*Id*. at 51).

Before addressing Plaintiff's primary claim of retaliation, the Undersigned notes that although Plaintiff is not precisely challenging the efficacy of the NCI grievance process or the results of his grievances, he has no constitutionally protected right to an effective prison grievance procedure regardless of the substance of his complaints, *Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002) (citations omitted), and no right to have a grievance satisfactorily resolved, *Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 447 (6th Cir.

2005). Additionally, to the extent that Plaintiff alleges that Defendants failed to comply with ODRC polices, "prisoners do not have a federal statutory or constitutional right to enforce prison officials' compliance with prison policies." *Lumbus v. Weisbar*, No. 1:23-cv-196, 2024 WL 1756915, at *11 (S.D. Ohio Apr. 24, 2024) (citing *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003)).

At base, Plaintiff alleges that the actions by Crossin, Cobb, and Frizzel set forth above were in retaliation for Plaintiff's lawsuit against them. To establish a claim of retaliation, Plaintiff must show that:

> (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there was a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Wiley v. Kentucky Dep't. of Corr.*, No. 11-97-HRW, 2012 WL 5878678, at *13 (E.D. Ky. Nov. 21, 2012) (citing *Brown v. Crowley*, 312 F.3d 782, 787 (6th Cir. 2002); and *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). Plaintiff does not plausibly allege facts that would allow the Court to find these factors.

Plaintiff complains that Crossin failed in his duty to personally write the conduct report on inmate Jones (Doc 4-1, at 62); that Cobb and Frizzel did not properly handle the assault by not reporting it to the OSPH as felony of the third degree (*id.*); and that Cobb lied about reporting the assault to the OSHP (Doc. 4, at 50). Plaintiff argues that these actions collectively amounted to, and/or manifested in, Defendants thwarting Plaintiff from taking advantage of the grievance process <u>*in*</u> <u>*retaliation*</u> for Plaintiff filing a lawsuit against the prison mailroom staff. (*Id.*). These cobbled-together allegations fail to state a claim of retaliation.

Inmates have a First Amendment right to file non-frivolous grievances, *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000), and to access to the Courts, *Bounds v. Smith*, 430 U.S. 817, 821 (1977). Plaintiff thus was engaging in protected conduct when he filed an "unprofessional conduct" grievance against Crossin on September 21, 2025, for not personally filing a conduct report against inmate Jones, (Doc. 4-1, at 62); and when he filed a lawsuit targeting NCI mailroom staff, (Doc. 4-2, at 65[1]). But Plaintiff's allegations do not support an inference that Crossin's action of failing to personally write the conduct report against inmate Jones, or Cobb's and Frizzel's action of failing to report the assault to the OSHP, or Cobb's action of lying about reporting the assault to the OSHP, constitute "adverse actions" that would deter a person of ordinary firmness from continuing to engage in that conduct.

Whether a particular action is "adverse" within the meaning of a retaliation claim is contextual. *Thaddeus-X*, 175 F.3d at 396. "Prisoners may be required to tolerate more than average citizens, before an action … is considered adverse." *Id*. at 398. Not every action taken against a plaintiff is constitutionally cognizable. *Id*. at 396 (citing *Ingraham v. Wright*, 430 U.S. 651, 674 (1977) ("There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned)). Consider Plaintiff's allegations against the Defendants—individually and collectively—against this backdrop.

Crossin, rather than personally filling out a conduct report against inmate Jones, instead reported it to Defendant Cobb. (Doc. 4-1, at 61-62). That resulted in a review, which in turn resulted in a conduct report being issued on inmate Jones, (Doc. 4-1, at 58)—even if not by

[1] Although the "Civil Cover Sheet" exhibit attached as Doc. 4-2 contains no details about the nature of its suit, the Court assumes for purposes of addressing the instant Complaint that Doc. 4-2 represents Plaintiff's reference throughout his Complaint to his "lawsuit against the Mailroom staff." (Doc. 4, at 50).

Crossin personally. Plaintiff faults Frizzel for denying Plaintiff's grievance on the basis of the above sequence of events, (*id*. at 62), and for not reporting it to the OSHP or putting a separation on inmates Jones, (Doc. 4, at 50). And, according to Plaintiff, Cobb failed to report, and/or lied about reporting, the assault to the OSHP; he also denied Plaintiff's grievance. These allegations do not plausibly support an inference that the challenged actions would chill a person of ordinary firmness from filing grievances or lawsuits. That is, neither the sequence of events that caused a conduct report to be filed against inmate Jones, nor Frizzel's and Cobb's denial of Plaintiff's grievance about the manner in which the conduct report was issued against Jones, nor discrepancies in how/whether Cobb reported the incident to the OSHP, give rise to an inference that Defendants' actions amounted to "adverse actions" that would deter a person from availing himself of the grievance process or filing a lawsuit targeting the prison mailroom.

Beyond his failure to satisfy the "adverse actions" requirement for a retaliation claim, Plaintiff also fails to plausibly allege that Defendants' actions were motivated by Plaintiff's exercise of protected conduct—as opposed to mere compliance with institution policies and practices. Plaintiff offers no examples or facts from which the Court could plausibly infer "manipulation, misrepresentation, or intimidation" by the Defendants Crossin, Cobb, or Frizzel in retaliation against Plaintiff for filing grievances and/or a lawsuit targeting the NCI mailroom. (Doc. 4, at 50). "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state … a claim under § 1983.' " *Harbin v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted).

Plaintiff's Count One Retaliation claim should be **DISMISSED without prejudice** for failure to state a claim.

### C. Count Two – Cruel and Unusual Punishment

Plaintiff sues Defendants Crossin, Cobb, and Frizzel for failing to abide by ODRC procedures and for retaliating against Plaintiff by thwarting him from taking advantage of the grievance process "through machination, misrepresentation, or intimidation[.]" (Doc. 4, at 51-53). These actions, Plaintiff contends, subjected him to cruel and unusual punishment (pain and suffering) in violation of the Eighth Amendment.

Here, Plaintiff revisits the factual allegations set forth in Count One above—only now as stating a violation of his Eighth Amendment right against cruel and unusual punishment. Specifically, Plaintiff argues that the failure of Crossin, Cobb, and Frizzel to contact the OSHP or to put a separation on inmates Jones caused increased anxiety in Plaintiff that he would experience "further assaults from Jones's people, which subjected him to cruel and unusual punishment in violation of the Eighth Amendment." (*Id*. at 52). In so arguing, Plaintiff points to Crossin's failure to write his own conduct report on inmates Jones, as well as to Cobb's and Frizzel's denial of Plaintiff's grievances (and Cobb lying in his response to Plaintiff's grievance). (*Id*.). Plaintiff explains Defendants' actions subjected him, to the embarrassment of Jones telling people that he had gotten away with assaulting a white man, and to living "in constant fear that, if Jones found out he was seeking further charges to be brought against Jones for the assault, Jones would hire his people to assault [Plaintiff] off camera." (*Id*.).[2] These allegations do not plausibly state an Eighth Amendment claim.

---

[2] Plaintiff also disjointedly throws in that Defendants' "machination, misrepresentation and intimidation" during the grievance process not only violated statutory and constitutional rights, but also was somehow exacerbated by the fact that "they were properly trained and put into their job position [ ] by ODRC Chambers-Smith[.]" (Doc. 4, at 53). Whatever Plaintiff intended to convey here, the Court will address any claims against Defendant Chambers-Smith in Counts four and five below.

As a preliminary matter, *again*, to the extent that Plaintiff faults Defendants for failing to grant his grievance or failing to follow ODRC policies, Plaintiff has no constitutionally protected right to an effective prison grievance procedure regardless of the substance of his complaints, *Young*, 30 F. App'x at 569-70, or enforcement of prison policies, *Lumbus*, 2024 WL 1756915, at *11. More to the point, nothing about the denial of his grievances or the manner in which Defendants handled Jones's assault of Plaintiff implicate his Eighth Amendment rights.

A claim alleging a violation of the Eighth Amendment's prohibition against cruel and unusual punishment has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2) a sufficiently culpable state of mind. *Se Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Plaintiff's own exhibits reflect that inmate Jones inflicted a single "palm heal strike" while Plaintiff was in line to receive legal mail. (Doc. 4-1, at 58; *see also*, at 64). That incident "was not objectively, sufficiently serious[ ]" to implicate the Eighth Amendment, especially where Plaintiff does not suggest that he suffered any injury. *See, e.g., Chapple v. Franklin County*, No. 2:21-cv-5086, 2022 WL 856815, at *13 (S.D. Ohio Mar. 23, 2022). As for the subjective component, Plaintiff's unsupported and conclusory pronouncements of fear of future attacks by Jones's acquaintances do not plausibly support an inference that Defendants, in their handling of the assault, exhibited deliberate indifference to a substantial risk of serious harm. *Id*. at *12-13 (citations omitted). In fact, it does not appear from Plaintiff's own exhibits that the manner in which Defendants Crossin, Cobb, and Frizzel handled the assault was motivated by anything other than adherence to ODRC and NCI policies—which falls short of the requisite mental culpability to state an Eighth Amendment claim.

Plaintiff's Count Two Eighth Amendment claim should be **DISMISSED without prejudice** for failure to state a claim.

**D. Count Three – Due Process**

Plaintiff sues Defendants Cobb and Frizzel for failing to abide by ODRC procedures and for retaliating against Plaintiff "by retaliating and thwarting" him "from taking advantage of the grievance process "through machination, misrepresentation, and intimidation[ ]" in violation of his right to due process. (Doc. 4, at 53).

Here again, Plaintiff revisits the factual allegations set forth above in Counts One and Two—only now as stating a violation of his Fourteenth Amendment procedural due process rights. Specifically, Plaintiff argues that "Cobb's failure to grant [Plaintiff]'s grievance in addition to lying in his responses, subjected [Plaintiff] to cruel and unusual punishment (pain and suffering)." (*Id.*). He adds that "Frizzel's failure to grant [Plaintiff]'s grievance, subjected [Plaintiff] to cruel and unusual punishment (pain and suffering)." (*Id.*, at 53-53). Plaintiff contends that Defendants' actions subjected him to the embarrassment of Jones telling people he had gotten away with assaulting a white person, and to living in constant fear that Jones would hire acquaintances to assault Plaintiff off camera. He elaborates that "he suffered physical and mental discomfort by the annoyance and anxiety caused by the Defendants actions." (*Id.*, at 54).[3]

Plaintiff ***labels*** this as a Due Process claim, but by repeatedly alleging that he suffered pain and suffering, he ***argues*** an Eighth Amendment claim. His allegations establish neither.

---

[3] Plaintiff again disjointedly throws in that Defendants' "machination, misrepresentation and intimidation" during the grievance process not only violated statutory and constitutional rights, but also was somehow exacerbated by the fact that "they were properly trained and put into their job position [ ] by ODRC Chambers-Smith[.]" (Doc. 4, at 54). The Court will address

First, the Undersigned has already determined that Plaintiff fails to state an Eighth Amendment claim and will not revisit that issue here. Nor will the Undersigned revisit for a third time why Plaintiff's complaints about the grievance process or alleged violations of ODRC policies fail to state a constitutional claim.

Turning to Plaintiff's "Due Process" claim, to be clear, Plaintiff mentions the denial of due process but does not develop the claim. Liberally construing his Complaint, the Undersigned has attempted to consider his allegations in the context of a procedural due process claim. The Due Process Clause set forth in the Fourteenth Amendment provides that no State "shall … deprive any person of life, liberty, or property, without due process of law." *See, e.g., Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) (citations omitted). To demonstrate a procedural due process claim, Plaintiff must show (1) that he had a liberty or property interest which was interfered with by the State; and (2) that the procedures attendant upon deprivation were constitutionally sufficient. *Bethel v. Jenkins*, 988 F.3d 931, 942 (6th Cir. 2021) (citation omitted).

Plaintiff must first identify a "protected interest" in order to proceed. *See Swihart v. Wilkinson*, 209 F. App'x 456, 458 (6th Cir. 2006) ("A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest…") (citation omitted). Plaintiff has not clearly identified a protected liberty or property interest in his Complaint. This failure alone warrants dismissal of his due process claim. Moreover, without a clearly delineated liberty or property interest, the Court cannot determine whether the procedures attendant upon deprivation of that unidentified interest were constitutionally sufficient.

---

any claims against Defendant Chambers-Smith in Counts four and five below.

Plaintiff's Count Three Due Process claim should be **DISMISSED without prejudice** for failure to state a claim.

**E. Counts Four and Five – Failure to Train or Hire Competent Employees**

In Counts Four and Five, Plaintiff sues ODRC Director Annette Chambers-Smith and NCI Warden Jay Forshey, respectively, for failing to train and/or hire competent employees. (Doc. 4, at 55-56). He states that the Defendant-employees violated several administrative codes, which deprived Plaintiff of his Fourteenth Amendment procedural due process rights, and also resulted in his "physical and mental discomfort by the annoyance and anxiety caused by the Defendants' actions." (*Id*., at 55). Plaintiff is thus invoking supervisory liability; and fails to state any claims under that theory.

To hold a supervisor liable under § 1983, Plaintiff must allege that the supervisor was "somehow personally involved in the unconstitutional activity of a subordinate … or at least acquiesced in the alleged unconstitutional activity. *Wingo v. Tenn. Dep't of Corr.*, (citing *Dunn v. State of Tenn.*, 697 F.2d 121, 128 (6th Cir. 1982); and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). *Accord Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) ("plaintiff must show that [the supervisor] as least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."). The Undersigned has determined that Plaintiff failed to state any claims that Defendants Crossin, Cobb, or Frizzel engaged in unconstitutional conduct by the manner in which they handled Jones's assault against Plaintiff. Absent underlying unconstitutional conduct, Defendants Chambers-Smith and Forshey cannot be held liable under a theory of supervisory liability.

In short, the actions taken by Defendants Crossin, Cobb, and Frizzel in handling Jones's assault against Plaintiff were the result *not* of Chambers-Smith and Forshey failing to

train or supervise them, *but* of those officials' compliance with, and enforcement of, established policies and procedures. Plaintiff's own exhibits bear this out. Thus, the challenged actions appear to have been a function of the routine and proper response to an inmate-on-inmate assault—not inadequate training or incompetence. Beyond the foregoing, Plaintiff raises no additional details or questions about the adequacy of any training processes that would permit the imposition of any § 1983 liability on Chambers-Smith or Forshey for their failure to train employees. In sum, Plaintiff's allegations do not plausibly support an inference that any challenged actions were unconstitutional—much less the result of Chambers-Smith and/or Forshey failing to train, supervise, or hire "competent" personnel.

Thus, Plaintiff's Fourth and Fifth Count Failure-to-Train claims should be **DISMISSED without prejudice** for failure to state a claim.

## IV. Conclusion

The Undersigned concludes that Plaintiff's Complaint should be **DISMISSED** in its entirety.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The instant complaint be **DISMISSED without prejudice**.

2. The Court **CERTIFY** under 28 U.S.C. § 1915(a)(3) that, for the foregoing reasons, an appeal of any Order adopting this Report and Recommendations would not be taken in good faith and therefore **DENY** Plaintiff leave to appeal *in forma pauperis*. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

**IT IS SO RECOMMENDED.**

August 13, 2026

*s/Stephanie K. Bowman*
STEPHANIE K. BOWMAN
Chief United States Magistrate Judge

## PROCEDURE ON OBJECTIONS

Pursuant to Fed. R. Crim. P. 72(b), **WITHIN 14 DAYS** after being served a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).